1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT
9                      CENTRAL DISTRICT OF CALIFORNIA
10
11    K.E.B.,                              Case No. 2:19-cv-09501-SHK
12                          Plaintiff,
13                v.                       ORDER GRANTING IN PART
                                           PETITION FOR ATTORNEY FEES
14    ANDREW M. SAUL, Commissioner of      AND COSTS UNDER THE EQUAL
      Social Security,                     ACCESS TO JUSTICE ACT
15
16                          Defendant.
17
18           Presently before the Court is Plaintiff K.E.B.'s[1] ("Plaintiff") Petition for
19    Attorney Fees ("Petition" or "Pet.") and Costs under the Equal Access to Justice
20    Act, 28 U.S.C. § 2412 ("EAJA").  Electronic Case Filing Number ("ECF No.")
21    21, Pet.  For the reasons discussed below, Plaintiff's Petition is GRANTED in part
22    and DENIED in part.
23                      **I.      BACKGROUND**
24           Plaintiff filed an application for disability insurance benefits on June 29,
25    2016, and, after the Commissioner of the Social Security Administration
26    ("Commissioner," "Agency," or "Defendant") denied Plaintiff's claim, Plaintiff
27    _____
28    [1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with
      respect to Plaintiff's medical records discussed in this Opinion and Order.

appealed the Commissioner's decision to this Court.  <u>See</u> ECF No. 1, Compl.  In Plaintiff's appeal, Plaintiff raised three issues, including:

> 1) The failure of the [ALJ] to make any finding concerning additional sitting limitations despite overwhelming evidence of issues in this regard which would prevent full time employment;
>
> 2) The failure of the [ALJ] to make any finding concerning additional findings concerning Plauintiff's [sic] necessity to elevate her feet and the amount of time she would be off task; and
>
> 3) The finding that Plaintiff could perform past-relevant work as a bookkeeper, despite that factual support that the only way she performed this work was due to the fact that she was self-employed. On this basis alone, Plaintiff should be allowed to proceed to a step 5 finding in the sequential analysis.

ECF No. 18, Joint Stip. at 3-4.

Plaintiff argued these three issues in roughly two pages of the twelve-page Joint Stipulation[2] and provided an additional roughly three-page reply to Defendant's response in the Joint Stipulation.  <u>See id.</u> at 3-5, 9-11.  However, Plaintiff did not address each issue individually.  <u>See id.</u> at 4-5.  Instead, Plaintiff supported her arguments by asserting briefly that the ALJ erred by failing to include all her functional limitations in her residual functional capacity ("RFC") by: (1) improperly rejecting the opinions of three of Plaintiff's treating doctors; (2) finding Plaintiff's "testimony not consistent with the records that [the ALJ] wants to follow"; and (3) failing to consider that "[s]ince [Plaintiff] was self-employed, she could work at her own schedule and pace" and that jobs that accommodate

---

[2] The Court notes that Plaintiff raised the issues on a third page of the Joint Stipulation and began arguing those issues on the fourth page.  <u>See</u> ECF No. 18, Joint Stip. at 3-4.  The Court also notes, however, that Plaintiff's arguments and legal authority were contained in six short paragraphs spanning roughly only one-and-a half pages with double spacing between paragraphs.

1  Plaintiff's limitations in the way her self-employment did "simply do not exist in

2  this fashion in the open labor market." Id. at 4-5, 10.

3          The Court, in its Opinion and Order ("Order"), found that "[a]lthough

4  Plaintiff did not specifically address some of the evidence discussed" in the Order,

5  the Court "weighed both the evidence that supports and detracts from the [ALJ's]

6  conclusions[,] and f[ou]nd[] that the ALJ's rejection of Plaintiff's symptom

7  statements was not supported by substantial evidence in the record." ECF No. 19,

8  Order at 7-8 (citation and internal quotation marks omitted). Consequently, the

9  Court found that "the ALJ's RFC determination and step-four findings w[ere] not

10  supported by substantial evidence in the record" and the Court remanded the case

11  to the Commissioner for further proceedings based on that issue only. Id. at 8.

12          Thereafter, Plaintiff filed the instant Petition and Defendant opposed

13  Plaintiff's Petition ("Opposition" of "Opp'n"). ECF No. 21, Pet.; ECF No. 23,

14  Opp'n. The issue is now fully briefed and ready for decision.

15                    **I.      LEGAL STANDARD**

16          "[EAJA] departs from the general rule that each party to a lawsuit pays his

17  or her own legal fees." Hoa Hong Van v. Barnhart, 483 F.3d 600, 604 (9th Cir.

18  2007) (citations and internal quotation marks omitted). Instead, EAJA authorizes

19  the Court to "award to a prevailing party other than the United States fees and

20  other expenses . . . incurred by that party in any civil action . . . unless the court

21  finds that the position of the United States was substantially justified or that special

22  circumstances make an award unjust." Meier v. Colvin, 727 F.3d 867, 870 (9th

23  Cir. 2013) (citations and internal quotation marks omitted).

24          "EAJA . . . has a built-in check: Section 2412(d)(1)(A) disallows fees where

25  'special circumstances make an award unjust.'" Scarborough v. Principi, 541 U.S.

26  401, 422-23 (2004). Specifically, "§ 2412(d)(1)(A)'s safety valve gives the court

27  discretion to deny awards where equitable considerations dictate an award should

28  not be made." Id. at 423 (citation and internal quotation marks omitted).

## II.   DISCUSSION

Plaintiff's counsel ("Counsel") seeks $5,580.00 in attorney fees for 12.4 hours spent working on the case and $485 in costs.  ECF No. 21, Pet. at 8.

Defendant opposes the Petition on two grounds, that: (1) "the Commissioner's actions were 'substantially justified'" and, alternatively, (2) "that an award would be unjust in light of Plaintiff's deficient briefing."  ECF No. 23, Opp'n at 2.  Defendant also argues that if the Court does not deny the Petition, it "should reduce Plaintiff's unreasonable fee requests and award $1,586.51 in EAJA fees" and "should allow only $400 for the filing fee under 28 U.S.C. § 1920."  Id. at 2-3.  The Court addresses each of Defendant's arguments in turn.

### A.   Defendant's Position Was Not Substantially Justified.

#### 1.   Defendant's Arguments

Defendant argues that "Plaintiff is not entitled to EAJA fees because the Commissioner's Position was substantially justified in relying on waiver . . . ."  Id. at 3 (capitalization normalized).  Defendant asserts that "[t]he government litigated this case and relied on waiver based on the fact that Plaintiff's contentions were largely conclusory in nature."  Id. at 5 (citing Joint Stip. at 6).  Defendant adds that "[b]ecause Plaintiff failed to dispute the ALJ's specific findings, Defendant argued that Plaintiff had waived and could no longer dispute them."  Id. (citing Joint Stip. at 6-7).  Defendant also adds that the Court "acknowledged[] Plaintiff failed to address 'some of the evidence discussed [in its Order]' supporting a remand" but nevertheless "chose [to] not penalize Plaintiff for any briefing deficiencies, filled in the gaps in Plaintiff's briefing, and remanded the matter for further proceedings."  Id. at 6 (citing Opinion and Order at 7).  Defendant argues that because "Plaintiff relied on largely conclusory contentions and the Court had to consider evidence that Plaintiff overlooked in the record as a whole[,] . . . the Court should find that the position of the government was substantially justified and that Plaintiff is not entitled to EAJA fees."  Id.

4

### 2.      Court's Consideration Of Defendant's Position In Its Order

In its Order remanding the case for further proceedings, the Court observed Defendant's argument that "to the extent Plaintiff failed to specifically dispute the reasons provided by the ALJ for rejecting Plaintiff's symptom statements, 'Plaintiff ignored those findings and may no longer dispute them.'" Id. at 6-7.  The Court, however, stated that "[a]lthough Plaintiff did not specifically address some of the evidence discussed [in the Order], the Court has weighed both the evidence that supports and detracts from the [ALJ's] conclusions[,]" and found that "the ALJ's rejection of Plaintiff's symptom statements was not supported by substantial evidence in the record."  ECF No. 19, Order at 7-8.

Specifically, the Court noted that:

the ALJ rejected Plaintiff's symptom statements for the following five reasons: (1) Plaintiff's ADLs were "generally inconsistent with disability"; (2) "inconsistencies in the record" between Plaintiff's statements and the medical evidence; (3) Plaintiff's failure "take stronger prescribed pain medication instead of over-the-counter medication and a patch"; (4) Plaintiff's "noncompliance with medical evidence"; and (5) "limited and conservative treatment."

Id. at 12.  The Court discussed each reason in turn and found that none were supported by substantial evidence in the record.  See id. at 12-31.

### 3.      Legal Standard

"It is the government's burden to show that its position was substantially justified."  Meier, 727 F.3d at 870 (citation omitted).  "Substantial justification means 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'"  Id. (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)).  "Put differently, the government's position must have a 'reasonable basis both in law and fact.'"  Id. (quoting Pierce, 487 U.S. at 565)).

1    "The position of the United States includes both the government's litigation
2    position and the underlying agency action giving rise to the civil action." <u>Id.</u>
3    (citation and internal quotation marks omitted).  "As EAJA provides, position of
4    the United States means, in addition to the position taken by the United States in
5    the civil action, the action or failure to act by the agency upon which the civil action
6    is based." <u>Id.</u> (citation, emphasis, and internal quotation marks omitted).  "The
7    ALJ's decision, therefore, is directly and literally 'the action or failure to act by the
8    agency upon which the civil action is based' . . . [and] EAJA's plain language thus
9    directs courts to focus on the ALJ's decision." <u>Id.</u> at 870-71 (quoting 28 U.S.C.
10   § 2412(d)(2)(D)).  "This court and other circuits have held that a holding that the
11   agency's decision . . . was unsupported by substantial evidence is . . . a strong
12   indication that the position of the United States . . . was not substantially justified."
13   <u>Id.</u> at 782 (citation and internal quotation marks omitted).  Moreover, "[t]he
14   government's position must be substantially justified at each stage of the
15   proceedings" and "the government's litigation position—[when] defending the
16   ALJ's errors on appeal—lack[s] the requisite justification." <u>Id.</u> at 782-83.

### 4.    Analysis

17
18        Here, Plaintiff raised the issue of the ALJ improperly rejecting Plaintiff's
19   symptom statements and Defendant, in addition to asserting waiver, argued in
20   favor of the ALJ's rejection of Plaintiff's symptom statements and cited the ALJ's
21   findings and evidence in the record to support this contention.  <u>See</u> ECF No. 18,
22   Joint Stip. at 4-5, 6-8.  For example, Defendant argued that the ALJ "considered
23   that Plaintiff failed to comply with medical advice and largely used over the counter
24   medications" when rejecting Plaintiff's symptom statements, and gave "*examples*
25   from the medical records while considering the overall weight of the medical record
26   as a whole . . . ." <u>Id.</u> at 8, 8 n.3 (emphasis in original).
27        Because Plaintiff asserted that the ALJ improperly rejecting Plaintiff's
28   symptom statements, and because Defendant argued that the ALJ properly rejected

Plaintiff's symptom statements by finding that Plaintiff failed to comply with medical advice and by largely using over the counter medications, the Court reviewed the ALJ's rejection of Plaintiff's statements and discovered that the ALJ's finding was not supported by the "overall weight of the medical record as a whole" as Defendant asserted. Id. at 8 n.3.

Specifically, with respect to the ALJ's finding that Plaintiff's symptom statements were due little weight because Plaintiff "largely used over the counter medications" as Defendant argued, see id. at 8, the Court found that "the record indicates that Plaintiff took stronger and more medications than the ALJ observed." ECF No. 19, Order at 26. The Court found, for example, that:

> the ALJ failed to consider evidence that Plaintiff took, among other medications, Tramadol for her pain and Gabapentin for her seizures. See Tr. 43, 177, 218, 484-85, 488-91, 667. Moreover, the record reveals that Plaintiff did not use "a lidocaine patch at night" to sleep; instead, Plaintiff used two to three lidocaine patches at night, and Plaintiff testified that three lidocaine patches was the maximum number of patches she could use at one time. Tr. 19, 21, 43 (emphasis added). Moreover, Plaintiff received multiple injections throughout the record to treat pain, which the ALJ failed to acknowledge. See Tr. 181-82, 183, 500, 562, 586-87.

Id. (emphasis from original removed). The Court, therefore, found that:

> the ALJ's rejection of Plaintiff's symptom statements for not taking a "stronger prescribed pain medication instead of over-the-counter medication and a patch" was not supported by substantial evidence because the record reveals that Plaintiff used prescribed narcotic-like pain medication, as well as multiple—and sometimes even the maximum number of allowed—lidocaine patches.

Id.

Moreover, the Court found evidence in the record of a valid reason for "Plaintiff['s] use[ of] over-the-counter medication rather than prescription medication to treat her symptoms," which was that Plaintiff's "prescription medication caused adverse side effects." Id. Specifically, the Court observed that "Plaintiff's medical records support Plaintiff's allegations of adverse side effects. For example, Plaintiff's doctors indicated that Plaintiff's prescription medications cause dizziness and drowsiness and affects Plaintiff's ability to work." Id. at 27 (citing Tr. 487, 754).

With respect to the ALJ's rejection of Plaintiff's symptom statements because "Plaintiff failed to comply with medical advice[,]" the Court found that this too was not a clear and convincing reason supported by substantial evidence for rejecting Plaintiff's symptom statements. ECF No. 18, Joint Stip. at 8; ECF No. 19, Order at 27-29. Specifically, the Court addressed the three instances of Plaintiff's alleged non-compliance with medical advice cited by the ALJ—that Plaintiff (1) "refused to undergo lumbar surgery despite a diagnosis of severe lumbar stenosis[]"; (2) that there was no evidence in the record that Plaintiff attended physical therapy after 2013; and (3) that Plaintiff failed to "undergo further injections based on her history of improvement with injections"—and found that none were supported by substantial evidence in the record. ECF No. 19, Order at 27-29 (quoting Tr. 21).

With respect to the ALJ's first purported instance of non-compliance with medical advice—that Plaintiff failed to undergo lumbar surgery—the Court found that Plaintiff provided a valid reason for refusing surgery, that "within two weeks of the severe diagnosis and surgery recommendation, other doctors diagnosed less severe problems and did not recommend surgery." Id. at 27-28. Specifically, the Court found that:

the ALJ correctly observed that Plaintiff was "reluctant" to accept her February 2, 2016, diagnosis of severe lumbar stenosis and

8

the resulting recommendation that she undergo lumbar surgery. See Tr. 257. However, the ALJ did not consider or discuss when making this finding that one week earlier, on January 25, 2016, Plaintiff was diagnosed by another doctor with only "moderate to severe left and moderate foraminal stenosis . . . at L5-S1" and "at L3-L4[,] . . . moderate left foraminal stenosis." Tr. 541. Moreover, although Plaintiff was "reluctant" to consult with Dr. Ramberg as the ALJ correctly observes, Plaintiff nevertheless did so and received a second opinion from Dr. Ramberg on February 16, 2016, that surgery would not be helpful. Tr. 257, 484-95. Specifically, Dr. Ramberg noted on February 16, 2016, that Plaintiff's "L3-4 disc is now collapsed. As [Plaintiff] does not have much in the way [o]f radicular symptoms and the slippage is not increased, surgical fusion is not highly recommended and would have to be from L3 to the sacrum." Tr. 492, 495.

Moreover, in July 2016, Dr. Ramberg again indicated the surgery was not needed at that time. Specifically, Dr. Ramberg indicated that Plaintiff "continues [to suffer] with cervical and lumbar radiculopathy" and that Plaintiff's "job activities are compromised by the symptomology of the disease." Tr. 487. Dr. Ramberg added that Plaintiff "needs to restrict her activities" and that "[s]urgical treatment may be needed in the future but will probably not affect [Plaintiff's] work status." Tr. 487, 490.

Id. at 28. As such, the Court found that "because there was a good reason for not accepting the severe diagnosis and resulting surgery recommendation—other doctors provided different diagnoses and recommendations—Plaintiff's reluctance to accept a diagnosis and refusal to accept a surgical recommendation was not a clear and convincing reason to reject Plaintiff's symptom statements." Id. at 28-29.

9

With respect to the ALJ's second instance of noncompliance—that Plaintiff failed to undergo physical therapy after 2013—the Court found that this finding was not supported by substantial evidence in the record because "Plaintiff indeed saw a physical therapist at least ten times beginning on February 24, 2014, for treatment sessions that lasted fifty minutes and included ultrasounds and manual therapy." Id. at 29 (citing Tr. 766-69, 771-74).

With respect to the ALJ's third instance of noncompliance—that Plaintiff failed to follow up with recommendations that she undergo further injections—the Court found that this finding was also not supported by substantial evidence in the record because "Plaintiff received multiple injections throughout the record to treat pain, which the ALJ failed to acknowledge." Id. (citing Tr. 181-82, 183, 500, 562, 586-87).

Accordingly, because the parties disputed the ALJ's rejection of Plaintiff's symptom statements, the fact that the parties failed to cite the aforementioned evidence in their Joint Stipulation does not justify Defendant's reliance on waiver, nor absolve the ALJ's failure to consider or discuss the evidence in her decision. As such, because Defendant's argument in the Joint Stipulation, as well as the ALJ's finding in the unfavorable decision, were not supported by the record, including the evidence discussed above, the Court finds that Defendant has failed to meet Defendant's burden of showing that Defendant's position, which "includes both the government's litigation position and the underlying agency action giving rise to the civil action[,]" was substantially justified. Meier, 727 F.3d at 870 (citation and internal quotation marks omitted). As such, the Court turns next to whether circumstances exist that make an EAJA fee award unjust.

**B.**   **Circumstances Do Not Exist That Make A Fee Award Unjust.**

Defendant argues that "[t]he Court should exercise its discretion and deny a fee award based on equitable considerations" because the circumstances of this case "make an EAJA award unjust." ECF No. 23, Opp'n at 7 (citing 28 U.S.C.

§ 2412(d)(1)(A)).  Defendant asserts that Defendant "chose to litigate this case because Plaintiff made largely conclusory contentions" and "[e]ven though Plaintiff prevailed, Defendant could not foresee such a result when litigating this case."  Id.  Defendant argues that "[b]ecause Plaintiff's briefing played at best a marginal role in the Court's decision to remand—with the Court filling in the gaps—it would be unjust for Plaintiff to receive an EAJA award for the Court's labor and for Defendant to bear such cost."  Id. (citation omitted).

Here, the Court disagrees with Defendant's contention that an EAJA fee award would be unjust in this case because this result could not be foreseen.  This assertion fails because the parties had access to the same record the Court reviewed, which, as the Court discussed throughout much of its thirty-two-page Order, was replete with evidence not considered or discussed by the ALJ when rejecting Plaintiff's symptom statements.

For example, as discussed above, the ALJ rejected Plaintiff's symptom statements in part because the ALJ found that Plaintiff had not seen a physical therapist after 2013, when the record revealed that Plaintiff had seen a physical therapist at least ten times after 2013.  See Tr. 766-69, 771-74.  As also discussed above, the ALJ rejected Plaintiff's symptom statements because of Plaintiff's alleged failure to follow up with recommended injections, when a review of the record revealed that Plaintiff received multiple injections throughout the relevant time period to treat pain.  See Tr. 181-82, 183, 500, 562, 586-87.

Accordingly, the Court finds that because the parties disputed the ALJ's rejection of Plaintiff's credibility, and because the record was replete with evidence not considered or discussed by the ALJ when rejecting Plaintiff's symptom statements, the outcome of this case was foreseeable had the parties examined the record as closely as the Court did and argued the facts of the case to the Court.  As such, the Court finds that special circumstances do not exist that would make a fee award unjust here.  Scarborough, 541 U.S. at 422-23 (2004); 28 U.S.C.

1   § 2412(d)(1)(A).  Therefore, because the Court finds that EAJA fees are warranted

2   here, it turns next to the reasonableness of the amount Plaintiff seeks.

3           **C.**      **<u>The Amount Plaintiff Seeks Is Not Justified.</u>**

4                   **1.**      **Amount Plaintiff Seeks**

5        As discussed above, Plaintiff seeks $6,065.00 in attorney's fees and costs,

6   consisting of $5,580.00 in attorney fees for 12.4 hours spent working on the case at

7   "an enhanced . . . prevailing market rate of $450 per hour[,]" and $485 for

8   "necessary appeal expenses, such as filing fees, traveling, printing, computerized

9   legal research, and so on."  ECF No. 21, Pet. at 8.

10        With respect to the enhanced fee of $450 per hour that Counsel seeks,

11   Counsel argues that an enhanced fee is warranted in this case for three reasons.  <u>Id.</u>

12   at 7.

13        First, Counsel asserts that he:

14        Possess[es] distinct knowledge and skills developed through his

15        practice specialty in the law relating to all forms of disability including

16        Social Security Disability and California Workers' Compensation

17        Disability law.  For almost 20 years, Mr. Feld has represented the

18        disabled. He is a Certified Specialist with the State of California in

19        Workers' Compensation disability.  He is a member of NOSSCR, has

20        participated in hundreds of Social Security Administration hearings.

21        He further has handled scores of Appeals Council appeals and is now

22        currently handling more than 10 Federal Appeals within in the 9th

23        Circuit, Central and Eastern Divisions.

24   <u>Id.</u>

25        Second, Counsel asserts that "the area of Social Security Disability practice

26   requires a unique skill set.  The attorney must have acquired both medical and legal

27   knowledge.  Additionally, it is important to understand the nuances of the complex

28   SSA systems."  <u>Id.</u>

Third, Counsel asserts that his "skills are mostly unavailable in Central California or elsewhere, at the statutory rate.  Very few individual attorneys provide services beyond an ALJ hearing, let alone engage in Federal Social Security Appeals.  Our research has found few if any between Los Angeles and San Jose, California besides our firm." Id. at 8.  Counsel declares that "[t]o his knowledge, there are few if any attorneys who endeavor Federal Appeals in this geographic area.  The closest attorneys found on an online search are in Los Angeles and San Francisco such as Judith Leland and Lawrence D. Rohlfing." Id. at 10.

## 2.    Defendant's Argument

Defendant argues that "Plaintiff's requests are excessive and should be reduced" because: (1) "Plaintiff's request for an enhanced hourly fee is unjustified"; (2) "some of Plaintiff's time is not compensable"; and (3) "some of Plaintiff's requests for costs are insufficiently supported." ECF No. 23, Opp'n at 8 (capitalization normalized).

With respect to Defendant's first argument—that an enhanced hourly fee is unjustified—Defendant argues that "Plaintiff has failed to demonstrate the existence of special factors justifying entitlement to enhanced fees." Id. (capitalization normalized).  Defendant adds that "[C]ounsel has not shown that his distinctive knowledge and skills were needed to resolve any particularly complex issues" and that "Plaintiff only raised routine social security issues such as whether the ALJ properly included all of her limitations and assessed medical opinions." Id. at 10.  Defendant also asserts that "[n]one of the issues Plaintiff raised and none of her conclusory contentions were needed in this litigation as the Court independently reviewed the ALJ's rejection of Plaintiff's symptom statements and considered evidence that Plaintiff did not address." Id.

Defendant adds that "[a]s a separate matter, Plaintiff has failed to show that she could not obtain counsel with the appropriate skills at the statutory rate . . . apart from her attorney's own Declaration that '[t]o my knowledge, there are few if

any attorneys who endeavor Federal Appeals in this geographic area.'" Id. at 10-11 (citing ECF No. 20, Pet. at 10).  Defendant asserts that Counsel's affidavit is "insufficient to meet Plaintiff's burden" here. Id. at 11 (citing Love v. Reilly, 924 F.2d 1492, 1496 (9th Cir. 1991)).  Defendant therefore argues that "because there is no showing that counsel's distinctive skills were needed in the litigation and unavailable at the statutory rate, Plaintiff is not entitled to enhanced attorney's fees[]" and "[a]t most, Plaintiff may claim the standard EAJA rates of $205.25 for work performed in 2019, and $206.77 for work performed in 2020." Id.

With respect to Defendant's second argument—that some of Plaintiff's time is not compensable—Defendant argues that "Plaintiff claims excessive hours to complete clerical tasks and review or prepare pro forma documents." Id. Defendant "suggests that Plaintiff should at most be compensated for 3.7 hours at $205.25 per hour in 2019 ($759.43) and 4 hours at $206.77 per hour in 2020 ($827.08) for a total of $1,586.51" to "better reflect the rather routine issues involved in this case and the lack of sufficient briefing by Plaintiff." Id. at 12. Defendant makes the following specific arguments in favor or reducing Counsel's fee award:

- "Plaintiff claims 1.7 hours for preparing and filing her Complaint and .2 hours to review the Notice of Assignment and update the file in 2019. Defendant suggests a reduction of .3 hours for filing the Complaint and for updating the file, which are non-compensable clerical tasks";
- "Plaintiff claims excessive time for preparing of reviewing pro forma documents in 2019 as follows: Review Statement of Consent to Proceed (.3 hour), Prepare Consent to Magistrate (.4 hour), and Review Defendant's Consent to Magistrate (.2 hour).  Defendant suggests a reduction of .4 hours";
- "because Plaintiff failed to address the critical dispositive issue in this case, Defendant suggest a reduction of 3 hours for 2020"; and

14

- "Plaintiff claims 2.5 hours for preparing her EAJA petition in 2020, including for needlessly arguing that she was entitled to enhanced fees." Defendant argues that "Plaintiff has had no reasonable basis to request enhanced fees, and she has made no showing beyond arguing that social security cases are complex and that there may be few practicing social security attorneys in this district." Defendant, therefore, "suggests limiting the compensable time to 1.5 hour[s]—a reduction of 1 hour." Id. at 11-12 (citations omitted and emphasis from original removed).

With respect to Defendant's final argument—that some of Plaintiff's requests for costs are insufficiently supported—Defendant argues that "Plaintiff's blanket request for $85 in costs in addition to the filing fee is insufficiently supported." Id. at 13 (capitalization normalized). Defendant asserts that "Plaintiff's blanket request, which includes unclear references to items such as 'slack,' includes non-compensable item(s) (printing –at least if performed in counsel's office), and is unsupported by any receipts." Id. Defendant, therefore, argues that "[t]he Court should deny that request and allow at most $400 for the filing fee under 28 U.S.C. § 1920." Id.

### 3.   Legal Standards

Fees and other expenses awardee under the EAJA "shall be based upon prevailing market rates for the kind and quality of the services furnished" and "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(D)(2)(A). However, under EAJA, id.; Thangaraja v. Gonzales, 428 F.3d 870, 876-77 (9th Cir. 2005); and Ninth Circuit Rule 39-1.6; the statutory maximum hourly rates under EAJA, with cost of living adjustments,

are $206.77 for work performed in the first half of 2020, and $205.25 for work performed in 2019.[3]

Attorneys can be awarded fees in excess of the EAJA statutory limit when three requirements are met. Love, 924 F.2d at 1496. "First, the attorney must possess distinctive knowledge and skills developed through a practice specialty. Secondly, those distinctive skills must be needed in the litigation. Lastly, those skills must not be available elsewhere at the statutory rate." Id. (citation omitted). In the Social Security Context, the Ninth Circuit has "affirmed an enhanced fee award because it was 'no routine disability case,' and the plaintiff's attorney possessed the 'special expertise' needed to litigate the case as a class action involving 'a highly complex area of the Social Security Act.'" Barry v. Astrue, No. CV–09–01677–PHX–NVW, 2011 WL 855644 at *1 (D. Ariz. Mar. 20, 2011) (quoting Prius v. Bowen, 869 F.2d 536, 542 (9th Cir. 1989)).

Federal courts assess the reasonableness of fee requests, including requests in social security cases, using the "lodestar" method. Costa v. Comm'r Soc. Sec. Admin., 690 F.3d 1132, 1135 (9th Cir. 2012). "To calculate the lodestar amount, the court multiplies 'the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). "[C]ounsel for the prevailing party should exercise billing judgment to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Id. (citation and internal quotation marks omitted). The court may adjust the lodestar upward or downward based on "a host of reasonableness factors, including the quality of representation, the benefit obtained . . . , the complexity and novelty of the issues presented, and the risk of nonpayment." Stetson v. Grissom, 821 F.3d 1157, 1166–67 (9th Cir. 2016) (citation and internal quotation marks omitted).

---

[3] See also https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (last accessed October 27, 2020).

However, "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees because the payoff is too uncertain[]," and "[a]s a result, courts should generally defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." Costa, 690 F.3d at 1135 (citation and internal quotation marks omitted) (punctuation normalized).  Therefore, "the district court must give reasons for reducing fees," and "[w]here the disparity between the fees requested and those awarded is relatively large, the district court should provide a specific articulation of its reasons for reducing the award." Id.  However, "a district court can impose a reduction of up to 10 percent—a haircut—based purely on the exercise of its discretion and without more specific explanation." Id. at 1136 (citation and internal quotation marks omitted).

### 4. Analysis

Here, the Court agrees in part with some of Defendant's objections and, as a result, finds that a reduction in Plaintiff's fee request is warranted here.

a.      Enhanced Hourly Rate Is Not Warranted.

With respect to Counsel's increased fee award of $450.00 per hour—over double the statutory amounts of $206.77 for work performed in the first half of 2020, and $205.25 for work performed in 2019—the Court finds that an increased hourly fee award is not warranted here because Counsel has not satisfied the third prong of the enhanced fee test.  Love, 924 F.2d at 1496.

Putting aside the first and second prongs of the increased fee test, on which the Court reserves judgment,[4] Counsel has not met the third prong of the increased

---

[4] Although the Court reserves judgment on the first two enhanced fee factors, it observes that the dispositive issue in this case was a relatively common and routine one—the ALJ's improper rejection of Plaintiff's symptom statements—rather than "'a highly complex area of the Social Security Act'" that would warrant an enhanced hourly fee award.  Barry, No. CV–09–01677–PHX–NVW, 2011 WL 855644 at *1 (D. Ariz. Mar. 20, 2011) (quoting Prius, 869 F.2d at 542). Moreover, although Counsel raised additional issues in this case, knowledge of a common, straightforward issue in federal Social Security disability appeals was all that was needed to

fee test because Counsel has not demonstrated that the skills necessary to achieve the outcome of this case were "<u>not</u> . . . available elsewhere at the statutory rate." <u>Id.</u> (emphasis added).  Rather, Counsel asserts only that his "skills are <u>mostly</u> unavailable in Central California or elsewhere, at the statutory rate" as evidenced by an "online search" he performed, which revealed that there are "few if any attorneys who endeavor Federal Appeals in this geographic area.  The closest attorneys found on an online search are in Los Angeles and San Francisco such as Judith Leland and Lawrence D. Rohlfing."  ECF No. 21, Pet. at 10.  Counsel also asserts that his "hourly rate is regularly billed out at $450 per hour."  <u>Id.</u>

Contrary to Counsel's assertion that attorneys can only be found with the requisite skills to achieve the favorable result his client received in this case, the Court is aware of at least two other attorneys in addition to the ones listed above by Counsel, who service Social Security disability clients in this area at the statutory rate, and the Court was able to easily identify many other Social Security disability attorneys in an online search who advertise their services in Counsel's geographic area.

The first attorney alluded to above that the Court is aware of, Andrew Thomas Koenig ("Mr. Koenig"), has an office in Ventura, California, which appears to be approximately 27 miles from Counsel's office in Santa Barbara, California.[5]  Mr. Koenig sought and received only the statutory rate for his successful Social Security disability appeal before this Court.  See <u>Melinda Eichberg v. Nancy A. Berryhill</u>, Case No. 2:18-cv-01052-DSF-SHK, ECF Nos. 19,

---

achieve a favorable result here.  Thus, distinctive knowledge beyond what other Social Security disability attorneys possess, and who are constrained by the statutory EAJA fee limits, was not needed in this litigation.

[5] <u>See</u> https://www.google.com/maps/dir/418+E+Canon+Perdido+St,+Santa+Barbara,+CA+93101/Times+Building,+93+S+Chestnut+St+%23208,+Ventura,+CA+93001/@34.3512595,119.5644213,12z/data=!3m1!4b1!4m14!4m13!1m5!1m1!1s0x80e913806ffbefab:0xbc64f527c4701edb!2m2!1d119.695514!2d34.4250752!1m5!1m1!1s0x80e9acefdfa7be15:0x4801eab2b46e4e1c!2m2!1d119.2917714!2d34.2798217!3e0 (last accessed October 1, 2020).

23.  Thus, contrary to Counsel's representation that the closest attorneys who endeavor federal appeals in this geographic area are in Los Angeles and San Francisco, Mr. Koenig, whose office is a short twenty-seven mile drive down the California coast from Counsel's office, has proven to successfully handle Social Security disability appeals in this Court at the statutory rate.

The second attorney, James Sung Pi ("Mr. Pi"), whose listed address is in New York, New York, successfully represented his Anaheim, California based client in a Social Security disability appeal before this Court and sought and received only the statutory rate for his successful handling of the case.  See Jose Lucio v. Carolyn W. Colvin, Case No. 8:17-cv-00046-SHK, ECF Nos. 27, 28, 32. Thus, Mr. Pi's successful appeal before this Court from New York indicates that practitioners with the requisite skills to achieve favorable results for their clients before this Court are indeed "available elsewhere at the statutory rate," Love, 924 F.2d at 1496, as evidenced by Mr. Pi's successful representation of his California client from his office in New York.

Moreover, a brief online search performed by the Court reveals that at least nine attorneys with fourteen to fifty-seven years' experience hold themselves out as Social Security disability lawyers in Santa Barbara, California, where Counsel's office is located, and another seven attorneys with twenty-three to forty-three years' experience hold themselves out as Social Security disability lawyers in nearby Ventura and Oxnard, California.[6]  Thus, the high concentration of practitioners holding themselves out as Social Security disability attorneys suggests that there are likely more than the two attorneys Counsel found in his online search and the two attorneys the Court is aware of that have the necessary skills to litigate this case at the statutory rate.

---

[6] See https://www.justia.com/lawyers/social-security-disability/california/santa-barbara (last accessed October 27, 2020).

Finally, although Counsel asserts that his "hourly rate is regularly billed out at $450 per hour[,]" this assertion is not persuasive because Counsel asserted that he has experience in "California Workers' Compensation Disability law[,]" as well as federal Social Security disability appeals, but Counsel stated only generally that he "regularly" bills out his services at $450 per hour.  ECF No. 21, Pet. at 7, 10.  Thus, it is unclear whether Counsel regularly bills his state workers compensation clients, his Social Security disability clients, or both $450 per hour.  To the extent that Counsel commands a higher rate for other work that is not subject to the above discussed statutory rates under EAJA, such information is not relevant to the Court's analysis here because those skills were not needed for this litigation and are, therefore, not persuasive to the Court's three step increased fee analysis.  See Love, 924 F.2d at 1496 ("First, the attorney must possess distinctive knowledge and skills developed through a practice specialty.  Secondly, those distinctive skills must be needed in the litigation.).

Moreover, to the extent Counsel meant that he regularly gets $450 per hour under EAJA for his work in Social Security disability appeals, Counsel cited no cases where he has actually been awarded an increased hourly fee above the statutory limit, and the Court can find no such cases.  Thus, the Court is unable to analogize the facts of the cases where Counsel has purportedly received over double the statutory rate permitted under EAJA to the facts of this case, in order to justify such as high hourly rate here.  Accordingly, Counsel's assertion that he regularly bills $450 per hour is not persuasive to the Court's analysis.

As such, an increased fee is not warranted in this case.  Therefore, the Court will utilize the statutory maximum hourly rates under EAJA that, with cost of living adjustments, amounts to $206.77 for work performed in the first half of 2020, and $205.25 for work performed in 2019.

/ / /

/ / /

20

1               b.    A Ten Percent Reduction Is Warranted Here.

2          Counsel claims 4.4 hours for work performed in 2019 and 8 hours for work

3    performed in 2020, for a total of 12.4 hours billed in this case.  As an initial matter,

4    the Court observes that the number of hours billed in this case is not high, but finds

5    that there are inconsistencies in Counsel's billing entries, not all of which are

6    discussed by the Court below, that nevertheless warrant a reduction in fees.

7    Because the Court finds that a ten percent reduction to Counsel's fee request is

8    warranted in this case, it does not address Defendant's specific arguments

9    regarding each billing entry in the Petition.

10         Here, included in Counsel's billing entries is an entry for 1.7 hours for

11   preparing the initial portion of the Joint Submission and .6 hours for reviewing the

12   781-page administrative record in this case.  See ECF No. 21, Pet. at 11.  As

13   discussed above, Counsel's initial arguments covered roughly only one-and-a-half

14   pages of briefing.  And besides two paragraphs of case citations in the initial portion

15   of the Joint Submission, none of the arguments supported Counsel's argument that

16   the ALJ erred in rejecting Plaintiff's symptoms statements.  In sum, Counsel's

17   entire initial argument in the Joint Stipulation consisted of only four short

18   paragraphs spread over fifteen sentences.  See ECF No. 18, Joint Stip. at 4-5.

19   However, even though Counsel's arguments in favor of remanding the case were

20   scant and the evidence cited by Counsel in support of those arguments was anemic,

21   the Court finds that the amount of time spent on these tasks was reasonable.

22         Comparatively some of Counsel's other billing entries seem proportionally

23   high compared to the two aforementioned tasks.  For example, as stated above,

24   Counsel was able to read the 781-page administrative record in .6 hours.  See ECF

25   No. 21, Pet. at 11.  Thus, Counsel was able to digest 781 pages of the facts most

26   critical to his client's case in thirty-six minutes, or at a pace of roughly four seconds

27   per page.  However, comparatively, Counsel seeks much more time to read less

28   consequential documents to this case in other billing entries.  For example, Counsel

seeks .7 hours to review Defendant's two-page Answer that consists of six statements made in seven short sentences.  See id.; see also ECF No. 15, Answer. Thus, Counsel's billing indicates that Counsel can digest the most critical facts of the case at four seconds per page, but that it took forty-two minutes to read seven sentences.  Similarly, Counsel claims .3 hours, or eighteen minutes, to read Defendant's one-page Statement of Consent to Proceed Before the Magistrate Judge ("Consent Statement") and .3 hours to "[r]eceived, reviewed and service of Summons and Complaint[.]"  See ECF No. 21, Pet. at 11; ECF No. 12, Consent Statement.

The Court finds that eighteen minutes to read Defendant's Consent Statement, the contents of which are self-explanatory by the title of the document, seems proportionately high when compared to Counsel's ability to ready and digest the contents of the 781-page administrative record at a pace of four seconds per page.

Moreover, Counsel indicated that he spent 2.5 hours preparing his instant Petition, whereas, he spent only 1.7 hours on Plaintiff's initial arguments in the Joint Stipulation and .6 hours preparing Plaintiff's final position in the Joint Stipulation.  See ECF No. 21, Pet. at 11.  Thus, Counsel spent a total 2.3 hours briefing the Court on behalf of his client, but 2.5 hours briefing the Court on behalf of his own fee award.[7]

Because of the large discrepancy between the amount of time Counsel spent reviewing documents in this case, and because Counsel spent more time briefing the Court on his fee petition than he spent briefing the Court on his client's claim in the Joint Stipulation, the Court finds that a ten percent reduction to Counsel's

---

[7] Notably, 2.5 of the 12.4 hours—equaling over twenty percent—of Counsel's instant fee Petition is for time spent pursuing fees and costs in this case.  Counsel provides no argument for why these 2.5 hours, which represent over twenty percent of Counsel's total bill here, are compensable at the increased hourly rate of $450 per hour when, presumably, every Social Security disability practitioner possesses the skills necessary to petition courts for fees and costs.

fee request is warranted here.  As such, the Court reduces Counsel's fee award from 4.4 hours to 4.0 hours for work performed in 2019 and from 8 hours to 7.2 hours for work performed in 2020.  Accordingly, the Court awards $2,309.74[8] in fees for work performed in this case.

c.  A Reduction In Costs Is Warranted.

As discussed above, Counsel seeks $485 in costs, consisting of $400 for filing fees, and $85.00 for "administrative costs for postage, printing, case status, slack, MerusCase, etc."  Id. at 12 (capitalization normalized).  The Court finds that $400 for filing fees are reasonable here, but that the remaining $85 for expenses incurred as a result of "case status, slack, MerusCase, etc." are not reasonable because it is unclear what "case status, slack, MerusCase, etc." are and what each of those items cost.  Id.  Moreover, Counsel filed this case electronically.  Therefore, it is unclear what "administrative costs" were incurred, specifically, as a result of postage and printing in this electronically filed case.  As such, the Court reduces Counsel's fee request by $85 because it cannot reasonably discern with any specificity what costs were incurred beyond the $400 filing fee in this matter.  Accordingly, the Court awards $400 in Costs.

**III.   CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Petition [ECF No. 21], is **GRANTED** in part and **DENIED** in part.  Specifically, Plaintiff's Petition is **GRANTED** insofar as Plaintiff seeks fees and costs.  However, Plaintiff's Petition is **DENIED** insofar as Plaintiff seeks $5,580.00 in attorney fees and $485 in costs.  For the reasons discussed above, Plaintiff is awarded $2,309.74 in attorney fees, and $400 for filing fee costs.  The Commissioner shall pay such EAJA fees, subject to any offset to which the Government is legally entitled, to Plaintiff, which

---

[8] (4 hours x $205.25 = $821.00) + (7.2 hours x $206.77 = $1,488.74) = $2,309.74

23

Plaintiff shall then pay to Counsel.  Astrue v. Ratliff, 560 U.S. 586, 591, 597-98 (2010).

**IT IS SO ORDERED.**

DATED: 10/28/2020

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge